## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON MATTHEW CORBEIL** | : | **CIVIL ACTION NO. 1:13-CV-1323** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **VINCENT CAHILL III, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Clinton Matthew Corbeil ("plaintiff"), an inmate formerly housed at

the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania,

commenced this <u>Bivens</u>[1], 28 U.S.C. § 1331, civil rights action on May 15, 2013.  (Doc.

1.)  The matter is presently proceeding *via* an amended complaint (Doc. 9), wherein

plaintiff names the following individual defendants:  Vincent Cahill, III ("Cahill"),

Supervisor of Education; Angelo J. Jordon ("Jordon"), Disciplinary Hearing Officer;

Teacher Jeremy Wachter ("Wachter"); and Teacher Matthew Kaskie ("Kaskie").

Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56

filed on behalf of all defendants.  (Doc. 19.)  For the reasons set forth below, the

motion will be denied.

---

[1] <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403
U.S. 388 (1971).  <u>Bivens</u> stands for the proposition that "a citizen suffering a
compensable injury to a constitutionally protected interest could invoke the general
federal-question jurisdiction of the district courts to obtain an award of monetary
damages against the responsible federal official."  <u>Butz v. Economou</u>, 438 U.S. 478,
504 (1978).

I.      **Motion to Dismiss**

    A.      **Standard of Review**

       Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

       Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## B.    Allegations of the Complaint

Plaintiff alleges that, on June 10, 2009, he was institutionally employed as an education worker at USP-Lewisburg.  (Doc. 1, ¶ 1.)  Purportedly, plaintiff exhibited "outstanding" and "superior" work  and, as a result, he was reassigned to the "Library," which enabled him to receive a substantially higher salary.   (Id. at ¶ 2.) According to the amended complaint, Corbeil continued to receive outstanding work evaluations from July 7, 2009, through March 12, 2010, and was the highest paid inmate worker.  (Id. at ¶¶ 3-4.)   During this time period, Corbeil lodged several complaints against BOP staff and raised concerns with certain policies.  (Id. at ¶ 5.) For example, on March 12, 2010, he alleges that he spoke to defendant Cahill about expanding the law library hours to comply with BOP policy and requested that Cahill consider providing general population inmates with more educational

programming.  (Id. at ¶ 6.)  Plaintiff alleges that Cahill responded that "You inmates
don't have any say so in here and you should know your place, I'm firing you, and if
you continue to push for changing the law library hours or expanding educ.
programs I'll make your life miserable by placing you in the SHU and transferring
you to another 'hell hole' prison."  (Id. at ¶ 7.)

Between the dates of March 12, 2010 and March 16, 2010, defendant Cahill
allegedly removed plaintiff from his "educ./library assignment" on three occasions,
(Doc. 9, ¶ 9), only to have other staff members reassign plaintiff to the same
position.  (Id.)  "Eventually, defendant Cahill used his rank as the supervisor of
educ. To demand that his staff cease reassigning plaintiff to his educ./library work
assignment."  (Id.)

On July 20, 2011, defendant Kaskie suggested that plaintiff partake in adult
continuing education ("ACE") classes that aired on the inmate radio station.  (Doc.
9, ¶ 10.)  Between the dates of July 26, 2011, and August 8, 2011, plaintiff listened to
the radio programs, took notes, and completed the required tests.  (Id. at ¶ 12.)   On
August 9, 2011, he delivered his completed ACE tests to defendant Wachter and
requested credit.  (Id. at ¶ 13.)  Wachter allegedly responded "I'm not giving you
credit, you're just trying to get $25, rather than answering your cop-out so you can
file on this matter – Mr. Cahill already told me if you tried this I was to write you up
and he'd make sure you were locked up and placed into the SHU (Special Housing
Unit) as well as transferred so he didn't have to deal with your BP-9."  (Id. at ¶ 14.)
Later that same day, "Wachter wrote a false and fictitious incident report against

plaintiff (Incident Report #2196141) [charging him with stealing and being in an unauthorized area] in retaliation and in conspiracy with defendants Cahill and Kaskie for plaintiff's filing about trying to get credit for ACE classes" and plaintiff was transferred to the SHU.  (Id. at ¶¶ 15-17.)

Plaintiff alleges that defendants Kaskie, Wachter, Cahill and Jordan fabricated memorandums, denied him evidence and witnesses, and threatened or otherwise discouraged staff representatives from assisting plaintiff during the disciplinary hearing process.  (Doc. 9, ¶¶ 20-22.)  Further, defendant Jordan, who found plaintiff guilty, was not impartial during the hearing and "pre-sanctioned" him.  (Id. at ¶ 23.)

Plaintiff filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Virginia concerning the disciplinary action taken by defendants.  (Doc. 9, ¶ 28.)  Plaintiff represents that as a result of his habeas petition, the incident report was expunged and his good time was restored.

He states that "[a]lthough the BOP has restored [his] good -time and expunged the complained about incident report, as a result of this false incident report plaintiff was; required to serve about 100 days in the 'hole' (most of time that he did not have any of his personal belongings including legal work, address book, radio, etc.), lost a high-paying prison job where he earned about $1500 per year, was unable to participate in the contact visits that he was having prior to getting placed in the hole, was transferred to a very less desirable prison with 1500 inmates (versus

220) that was more violent and over 1000 miles away from his friends and family,

was denied participation in a religious Life Connections program offered by the

BOP, and lost access to his telephone, commissary, and other general rights and

privileges." (Doc, 9, ¶ 29.)  He avers that his First amendment right to file

grievances and petition the courts and his due process rights were violated by

defendants. (Id. at ¶ 30.)

**B.   Discussion**

A Bivens action is the federal counterpart to an action filed under 42 U.S.C. §

1983. See Paton v. LaPrade, 524 F.2d 82 (3d Cir.1975); Farmer v. Carlson, 685 F.

Supp. 1335, 1338 (M.D.Pa. 1988).  Section 1983 of Title 42 of the United States Code

offers private citizens a cause of action for violations of federal law by state officials.

See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

6

Plaintiff alleges that defendants retaliated against him because he was filing grievances concerning access to the prison law library and the lack of expansion of inmate adult educational programs.  The First Amendment offers protection for a wide variety of expressive activities.  <u>See</u> U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  <u>See</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate:  (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225).

Plaintiff also alleges that he is entitled to monetary compensation because his due process rights were violated in the context of the disciplinary hearing.[2]  The Fourteenth Amendment of the United States Constitution provides in pertinent part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  Due process protections attach in prison disciplinary

---

[2]Plaintiff alleges that subsequent to his filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Virginia, the Bureau of Prisons expunged his incident report expunged and restored his good conduct time.

proceedings in which the loss of good-time credits is at stake.  See Wolff v. McDonnell, 418 U.S. 539, 564–65 (1974).  In Wolff, the Supreme Court held that an inmate must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  Further, the disciplinary hearing officer's decision must be supported by "some evidence" on the record.  See Hill, 472 U.S. at 454, 105 S.Ct. 2768.

Review of plaintiff's amended complaint (Doc. 9), coupled with a reading of his brief (Doc. 30) in opposition to defendants' motion, reveals that plaintiff is plainly alleging First Amendment retaliation and Fourteenth Amendment due process claims.  Defendants ostensibly fail to recognize the retaliation claim and, consequently, do not address it in their motion to dismiss or for summary judgment.  Rather, they misapprehended plaintiff's allegations of adverse action, *i.e.*, loss of prison job, placement in the SHU, interference with filing of grievances, loss of privileges, denial of education materials, and transfer to a less desirable facility, as

individual constitutional claims and move to dismiss each of them.[3]   Moreover,

defendants do not respond in any fashion to plaintiff's claim that the procedures

used during his disciplinary proceedings violated his Fourteenth Amendment due

process rights.   Therefore, defendants' motion to dismiss will be denied.

## II.   Summary Judgment

### A.   Standard of Review

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  See Fed. R. Civ. P. 56(c).  The

burden of proof is upon the non-moving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief.

Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P.

56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "'The

non-moving party may not simply sit back and rest on the allegations in the

complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or

by the depositions, answers to interrogatories, and admissions on file, and designate

specific facts showing that there is a genuine issue for trial.'  Celotex [ ], 477 U.S. [ ]

---

[3]Defendants attempt to remedy this misapprehension in their reply brief. See Doc. 41, at 4-10.  However, new arguments raised for the first time in a reply brief may be disregarded by the court.  Anspach v. City of Philadelphia, 503 F.3d 256, 259 n. 1 (3d Cir. 2007) (observing that absent compelling circumstances, "failure to raise an argument in one's opening brief waives it."); Bayer AG v. Schein Pharma. Inc., 129 F. Supp.2d 705, 716 (D.N.J. 2001).  Moreover, these arguments are more appropriately raised in the context of standard Rule 56 motion practice, i.e. after the development of a full and complete factual record.

324 [ ] (1986) (internal quotations omitted)." <u>Schiazza v. Zoning Hearing Bd.,</u>

<u>Fairview Twp., York County, Pa</u>, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242,

250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the

cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

> **B.     Discussion**

Defendants invoke the defense of qualified immunity in their summary

judgment motion.  "The doctrine of qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (internal

quotation marks omitted).  "Qualified immunity balances two important

interests—the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and

liability when they perform their duties reasonably."  <u>Pearson</u>, 555 U.S. at 231.  It

"provides ample protection to all but the plainly incompetent or those who

knowingly violate the law."  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  "Thus, so

long as an official reasonably believes that his conduct complies with the law,

qualified immunity will shield that official from liability."  <u>Sharp</u>, 669 F.3d at 159

(citing <u>Pearson</u>, 555 U.S. at 244).  Although qualified immunity is generally a

question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity.  Giles v. Kearney, 571 F.3d 318, 325–26 (3d Cir. 2009).

Defendants argument is plainly flawed in that it does not seek the protection of qualified immunity on the retaliation or due process claims contained in plaintiff's amended complaint.  Hence, the summary judgment motion will be denied.

**VI.**     **Conclusion**

For the above-stated reasons, defendants' motion (Doc. 19) to dismiss or for summary judgment will be denied.

An appropriate order will issue.


                        /S/ CHRISTOPHER C. CONNER
                        Christopher C. Conner, Chief Judge
                        United States District Court
                        Middle District of Pennsylvania



Dated:        March 25, 2014