IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON MATTHEW CORBEIL,** | : | **CIVIL NO. 1:13-CV-1323** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **VINCENT CAHILL, III,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Clinton Matthew Corbeil ("plaintiff"), an inmate formerly housed at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, commenced this Bivens[1], 28 U.S.C. § 1331, civil rights action on May 15, 2013. (Doc. 1). The matter is presently proceeding *via* an amended complaint (Doc. 9), wherein plaintiff names the following individual defendants: Vincent Cahill, III ("Cahill"), Supervisor of Education; Angelo J. Jordon ("Jordon"), Disciplinary Hearing Officer; Teacher Jeremy Wachter ("Wachter"); and Teacher Matthew Kaskie ("Kaskie"). Before the court is defendants' motion (Doc. 46) for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or for partial

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

summary judgment. For the reasons set forth below, the instant motion to dismiss will be granted.

I.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II.   Allegations of the Complaint

Plaintiff alleges that on July 20, 2011, defendant Kaskie, a teacher in the Education Department at USP Lewisburg, advised him to "grab a packet" of Adult Continuing Education ("ACE") forms from the prison library and to complete the forms so that he might receive credit for an ACE class that was to be broadcast over the radio to inmates. (Doc. 9, ¶ 10). He took a packet and proceeded to listen to nine ACE programs from July 26, 2011 through August 8, 2011. (Id. at ¶¶ 11, 12).

At some unspecified time, he allegedly informed defendants Kaskie and Watcher, that he intended to file a grievance against defendant Cahill if he did not

3

receive credit for completing these classes. (Id. at ¶ 12). They allegedly advised him not to do so because Cahill had retaliated against inmates in the past. (Id.)

On August 9, 2011, upon completion of the course, he gave defendant Wachter his ACE packet and requested credit for the course. (Id. at ¶ 14). Defendant Wachter allegedly refused to give him the credit and informed him that defendant Cahill wanted him placed in the SHU and transferred so they wouldn't have to "deal with" his grievances. (Id.) Later that same day, defendant Wachter allegedly wrote a false incident report against him charging him with stealing and being in an unauthorized area, as an act of retaliation for filing a grievance against defendant Kaskie and in conspiracy with defendants Cahill and Kaskie. (Id. ¶¶ 15-16). He avers that defendants also submitted false reports and memoranda regarding the incident, testified falsely before the Discipline Hearing Officer ("DHO"), threatened to transfer or fire certain inmates if they testified in his favor, denied him witnesses, and discouraged his staff representative from assisting him. (Id. at ¶¶ 15-20).

He contends that DHO Jordan provided defendant Cahill with information regarding his defenses prior to the hearing, was not impartial, and denied him due process in numerous ways during the disciplinary hearing. (Id. at ¶¶ 21-23). Plaintiff was found guilty of the charged infractions on September 9, 2011. (Id. ¶ 23.) It is also alleged that DHO Jordan told plaintiff's advisor not to assist him with an appeal of the DHO's decision. (Id. ¶ 24). Plaintiff fully exhausted the administrative review process with regard to this disciplinary action. (Id. at ¶ 28).

It is undisputed that, while plaintiff was housed at the United States Penitentiary at Lee, subsequent to the filing of a petition for writ of habeas corpus

4

pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Virginia, the Federal Bureau of Prisons expunged the August 9, 2011 incident report from plaintiff's disciplinary record and restored his good conduct time credits.  (Id. at ¶ 28).

Corbeil alleges that, despite the expungement of the incident report and the restoration of his good conduct time, "as a result of this false incident report plaintiff was; required to serve about 100 days in the 'hole' (most of time that he did not have any of his personal belongings including legal work, address book, radio, etc.), lost a high-paying prison job where he earned about $1500 per year, was unable to participate in contact visits that he was having prior to getting placed in the hole, was transferred to a very less desirable prison with 1500 inmates (versus 220) that was more violent and over 1000 miles away from his friends and family, was denied participation in a religious Life Connections program offered by the BOP, and lost access to his telephone, commissary, and other general rights and privileges."  (Doc. 9, ¶ 29).

### III.  Discussion

The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake.  See Wolff v. McDonnell, 418 U.S. 539, 564–65 (1974).  However, in the matter *sub judice*, because the incident report and accompanying disciplinary proceedings

have been expunged, and plaintiff's good-time credits have been restored, the Wolff due process protections do not apply.

To the extent that plaintiff seeks relief based upon disciplinary confinement, the Due Process Clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges inasmuch as these other forms of discipline do not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Torres v. Fauver, 292 F.3d 141, 150–51 (3d Cir. 2002) (citing Sandin v. Conner, 515 U.S. 472, 486 (1995)).  Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest.  Sandin, 515 U.S. at 486; see Griffin v. Vaughn, 112 F.3d 703, 706-07 (3d Cir. 1997).

Under Sandin, prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions.  See, e.g., Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); Griffin, 112 F.3d at 706-08 (fifteen months in administrative custody is insufficient to trigger a due process violation).  Plaintiff's confinement to disciplinary segregation for approximately 100 days is not an atypical or significant deprivation that would give rise to a liberty interest under Sandin.  Moreover, the denial of commissary and telephone privileges does not amount to forms of

6

discipline that impose an atypical and significant hardship on the ordinary incidents of an inmate's prison life.  See Young v. Beard, 227 F. App'x. 138, (3d Cir. 2007) (stating that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin); see also Troy v. Kuhlmann, No. 96 Civ. 7190 (BSJ), 1999 WL 825622, at *12 (S.D.N.Y. Oct. 15, 1999) (finding "denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate").  In addition, the denial of visiting privileges and the loss of a prison job are insufficient to state a due process claim as prisoners do not have constitutionally protected interests in prison visitation or in holding a job.  See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Block v. Rutherford, 468 U.S. 576, 588 (1984); James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989).  Nor does an inmate have a justifiable expectation that he will be incarcerated in a particular prison.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Montayne v. Haymes, 427 U.S. 236, 242 (1976).  Because plaintiff's 100 days of disciplinary confinement and the accompanying denial of privileges are not the type of atypical or significant hardships contemplated by Sandin, 515 U.S. at 483, plaintiff's due process claims are subject to dismissal.

**IV.**     **Conclusion**

Based on the foregoing, defendants' motion (Doc. 46) for partial dismissal will be granted.

An appropriate order will issue.

                                                          /S/ CHRISTOPHER C. CONNER
                                                          Christopher C. Conner, Chief Judge
                                                          United States District Court
                                                          Middle District of Pennsylvania


Dated:       January 21, 2015